IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BILL TURNER,

      Plaintiff,

    v.                                                             No. 2:15-cv-00827-MCA-SMV

EMERALD CORRECTIONAL MANAGEMENT,
LLC, aka LINCOLN COUNTY DETENTION
CENTER; ARTHUR ANDERSON, Warden of
The Lincoln County Detention Center, in both his
individual and official capacities; LT. MOLLY
GODINEZ; aka "Lori Beth Becker Godines",
an employee of the Lincoln County Detention
Center, in both her individual and official capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants Emerald Correctional Management, LLC, aka Lincoln County Detention Center, and Arthur Anderson, Warden of the Lincoln County Detention Center's Motion to Dismiss First Amended Civil Complaint (Doc. 15) For Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to F.R.C.P. 12(b)(6) and Memorandum in Support*. [Doc. 21] The Court has considered the parties' submissions, the relevant law, and the record, and has otherwise been fully advised in the premises.

**BACKGROUND**

The allegations underlying Plaintiff's *First Amended Civil Complaint* (hereinafter, "the *Complaint*") occurred while Plaintiff was a pre-trial detainee of Lincoln County Detention Center in Carrizozo, New Mexico (the facility). [Doc. 15 & ¶ 14] The

Complaint uses the acronym LCDC to refer to Defendant Emerald Correctional Management and, for consistency, the Court does the same.  The Court has taken the following facts from the *Complaint*, and assumes that they are true. *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (stating that in ruling upon a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the Court assumes the truth of the plaintiff's factual allegations).  Additional facts are provided in the context of the Court's analysis.

Plaintiff was incarcerated with another inmate, "A.H.," a person who, in Plaintiff's words, "had profoundly offensive and dangerous habits[.]"  [Doc. 15 ¶¶ 16, 21]  A.H. habitually defecated on the floor of the cell, used his bare hands to clean himself after defecating, and masturbated in front of other inmates.  [Doc. 15 ¶ 21]  Without providing them with gloves or cleaning chemicals, LCDC required the other inmates to clean up after A.H.  [Doc. 15 ¶ 21] Further, while other inmates were sleeping at night, A.H. would use his bare hands to cup and drink ice water from a large bowl that was provided by LCDC as drinking water for the inmates.  [Doc. 15 ¶ 22]  Plaintiff reported these circumstances to LCDC's medical staff, and he asked LCDC to move A.H. to another cell but his request was denied.  [Doc. 15 ¶ 23]  When Plaintiff asked Lieutenant Molly Godinez[1] (the night supervisor at the facility), personally, to move A.H. to another cell, she told Plaintiff that "if he didn't like it, she would put [him (Plaintiff)] in solitary confinement."  [Doc. 15 ¶ 27]

---

[1] Lt. Godinez was named as a Defendant in this matter; however, Plaintiff voluntarily dismissed her from the lawsuit after he was unable to locate her whereabouts in order to serve her with process.  [Doc. 26]

Further, Lt. Godinez ordered her subordinate guards to not provide cleaning supplies to the inmates. [Doc. 15 ¶ 28] If the guards disobeyed or objected to her order they were fired or forced to resign. [Doc. 15 ¶ 28] While it was Godinez who actively ensured that the inmates were deprived of cleaning supplies, she "did so at the Warden's knowledge, approval and behest." [Doc. 15 ¶ 29]

Owing to the combined circumstances of the filth created by A.H.'s habits and the lack of cleaning supplies, an outbreak of staph infection occurred in the LCDC facility in 2014. [Doc. 15 ¶ 29] Multiple inmates contracted staph infections, and some of them contracted MRSA. [Id.] Inmates made formal complaints to LCDC about the staph infection outbreak and about the lack of cleaning supplies, and one of the guards employed by LCDC acknowledged that the "administration" was aware of the problem. [Doc. 15 ¶ 30] Nevertheless, LCDC "did little or nothing about it." [Doc. 15 ¶ 30]

After he was released from the facility, Plaintiff was diagnosed with MRSA. [Doc. 15 ¶ 35] MRSA is highly contagious and incurable. [Doc. 15 ¶ 40] The doctor who diagnosed Plaintiff's MRSA told him that the infection "was certainly due to the profoundly unclean habits of A[.]H[.] and the deficient cleaning practices of LCDC." [Doc. 15 ¶ 35] In response to these events, Plaintiff filed the present lawsuit.

In the *Complaint* Plaintiff claims that Defendants violated his substantive right to right to due process of law under the Fourteenth Amendment and 42 U.S.C. § 1983. He asserts two theories of liability—namely, that (1) Defendants deliberately created a danger that created a harm that injured Plaintiff when Defendants withheld cleaning supplies and deliberately ignored the extreme biological hazard caused by A.H.; and (2)

3

Defendants violated Plaintiff's right to substantive due process by subjecting him to conditions that amount to cruel and unusual punishment—namely by withholding cleaning supplies notwithstanding the contaminated conditions in the cell. [Doc. 15 p. 7, 9] Defendants LCDC and Warden Arthur Anderson seek dismissal of the *Complaint* pursuant to Fed. R.Civ. P. 12(b)(6). [Doc. 21]

## DISCUSSION

### Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a clam to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it includes factual content from which the Court may reasonably infer that the defendant is liable for the alleged misconduct. *Id.* For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations as true and views them in the light most favorable to the plaintiff. *Wilson*, 715 F.3d at 852.

### Plaintiff's Claims Against LCDC and Warden Anderson in his Official Capacity

In *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978) the Supreme Court held that a municipality can be sued under § 1983 where unconstitutional action that led to the lawsuit "implements or executes a policy statement . . . or decision officially adopted and promulgated by [its] officers." It is "well settled" that *Monell*'s holding also extends to private entities, such as LCDC, sued under §1983. *Smedley v. Corr. Corp. of Am.*, 175 Fed.Appx. 943, 946 (10th Cir. 2005). Thus, to state a § 1983 claim against such an entity, the plaintiff is required to show that the entity instituted an

official policy that was the "direct cause or moving force behind the [C]onstitutional violations." *Id.* The entity cannot be held liable solely because it employs a tortfeasor. *Id.* Likewise, because "[o]fficial-capacity suits . . . generally represent . . . another way of pleading an action against an entity of which an officer is an agent[,]" a plausible claim against an entity's agent in his "official capacity" requires a showing that the entity itself was the moving force behind the constitutional violation. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Defendants argue that Plaintiff has failed to state a plausible claim against LCDC and Warden Anderson in his official capacity because the *Complaint* does not include an allegation that LCDC, itself, had an unconstitutional policy that was "the moving force" behind the alleged harm. [Doc. 21 ¶¶ 4-5, 8-9] The Court agrees with Defendants in this regard.

In the *Complaint* Plaintiff alleges that LCDC required the inmates to clean up after A.H.; that he "asked LCDC to move A[.]H[.] to another cell" but the request was denied; that LCDC and its "administration" knew that there was a serious staph infection outbreak, but did nothing about it; and that a fellow inmate filed grievances with LCDC about the lack of cleaning supplies. [Doc. 15 ¶¶ 29-30] Plaintiff fails to allege, however, that LCDC instituted an official policy that directly caused or was the moving force behind the policy of withholding cleaning supplies from the inmates. *See Smedley*, 175 Fed.Appx. at 946 (requiring a plaintiff to show that the entity being sued pursuant to § 1983 established or effectuated the unconstitutional policy). Instead, in regard to policy, Plaintiff alleges only that the policy of withholding cleaning supplies originated with

5

Warden Anderson, and was effectuated by Lt. Godinez.  This allegation is insufficient to hold LCDC, itself, liable.  *Id.* (stating that an entity cannot be held liable merely because it employs a tortfeasor).  Accordingly, Plaintiff's claims against the entity LCDC, including his claims against Warden Anderson in his official capacity must be dismissed.

**Plaintiff's Substantive Due Process/Cruel and Unusual Punishment Claim Against Warden Anderson in His Individual Capacity**

"Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted).  "The Eighth Amendment requires jail officials to provide humane conditions of confinement by ensuring [that] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Id.*  To hold a jailer personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must show that the alleged deprivation was sufficiently serious, and that the jailer acted with deliberate indifference.  *Id.* (describing the "objective" and "subjective" components of an Eighth Amendment violation).

Defendants do not argue that the claimed deprivation in this case was not "sufficiently serious" to demonstrate a violation of the Eighth Amendment.  *See id.* ("The objective component [of an Eighth Amendment violation] requires that the alleged deprivation be "sufficiently serious").  Nor could they reasonably do so.  Plaintiff's allegations that during his confinement, he was forced to live in a common cell with A.H.

whose personal habits contaminated the cell and the drinking water; that he was deprived of disinfectant cleaning supplies that would protect him from the hazards associated with human waste; that his request that A.H. be moved to another cell was denied; and that he contracted MRSA as a result of the dangerously unsanitary conditions in the cell objectively violate the prohibition against cruel and unusual punishment.  *See McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (holding that three days spent in proximity to human waste was a sufficiently serious condition to state an Eighth Amendment violation claim); *DeSpain v. Uphoff*, 264 F.3d 965, 974-75 (10th Cir. 2001) (listing cases that stand for the proposition that exposure to human waste carries particular weight in the conditions of confinement calculus of a claimed Eighth Amendment violation); *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985) ("Failure to provide adequate cell cleaning supplies . . . deprives inmates of tools necessary to maintain minimally sanitary cells, seriously threatens their health, and amounts to a violation of the Eighth Amendment").

In regard to Warden Anderson's state of mind, Defendants do not directly address the "deliberate indifference" standard.  *See Craig*, 164 F.3d at 495 (stating that the subjective component of an Eighth Amendment violation requires the plaintiff to show that the defendant had a sufficiently culpable state of mind, which, in this context, is "deliberate indifference").  Instead, they generally assert that the *Complaint* does not demonstrate that Warden Anderson acted with "culpable mental intent[.]"  [Doc. 21 p. 6]  In this regard, the Court does not share Defendants' view of the *Complaint*.

A jailer evinces deliberate indifference where he "knows of and disregards an excessive risk to inmate health and safety[.]" *Craig*, 164 F.3d at 495. A deliberately indifferent state of mind may be shown by circumstantial evidence. *DeSpain*, 264 F.3d at 975. Plaintiff alleges that A.H., having been held in solitary confinement for "some period of time[,]" was moved to the general population after a lawsuit was filed by A.H.'s tribe challenging his solitary confinement. [Doc. 15 ¶¶ 18-20] A.H. habitually defecated on the floor of the cell, then used his bare hands to clean himself, and masturbated in the presence of his fellow inmates. The inmates were required to clean up after A.H., yet, at the warden's behest, and with his approval and knowledge, they were not given cleaning supplies or gloves. Plaintiff and other inmates made informal and formal complaints by which they requested that A.H. be moved to another cell owing to the obviously hazardous and unsanitary conditions that he created, and complained of the lack of cleaning supplies. An outbreak of a serious staph infection occurred among the inmates, some of whom contracted MRSA, yet the conditions in the facility did not change.

It may reasonably be inferred that Warden Anderson was aware of A.H.'s unusual habits before he placed A.H. in the general population, and that he was, therefore, aware of the attendant sanitation issues that would arise once A.H. was placed among other inmates. Even assuming, however, that he was unaware of A.H.'s habits prior to placing him in the general population, it is reasonable to infer that Warden Anderson became aware of A.H.'s habits through the inmates' various complaints and requests for cleaning supplies. Further, it is reasonable to infer, and it would be unreasonable to assume otherwise, that by the time the sanitation issues caused a serious outbreak of staph

infection among the inmates, some of whom contracted MRSA, Warden Anderson was fully aware of the problem.  Indeed, the allegations in the *Complaint* fully support this inference.  Nevertheless, Warden Anderson's policy of withholding cleaning supplies continued.  From the foregoing, the Court concludes that Plaintiff has shown that Warden Anderson knew of and disregarded an excessive risk to inmate health and safety such that the *Complaint* states a plausible claim against him in his individual capacity.  *Craig*, 164 F.3d at 495 (stating the standard by which "deliberate indifference" is measured).

Defendants argue that Plaintiff's claims against Warden Anderson in his individual capacity should be dismissed because Plaintiff failed to allege that he was personally involved the alleged Constitutional deprivations.  [Doc. 21 p. 5-7, 9-10]  The Court does not find this argument persuasive.  While it is true that Warden Anderson may only be held liable for his own misconduct, the allegations in the *Complaint* demonstrate that Warden Anderson's personal involvement in creating the circumstances that led to Plaintiff's claims was such that Plaintiff may proceed on a theory of supervisory liability.

"A government official can be held liable []in a § 1983 suit[] for a constitutional violation under a theory of supervisory liability" where a plaintiff shows that the official: (1) "promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Bame v. Iron Cty.*, 566 Fed.Appx. 731, 739-40 (10th Cir. 2014); *see Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (stating in abbreviated terms

the test for supervisory liability "(1) personal involvement; (2) sufficient causal connection[;] and (3) culpable state of mind").

Here, the allegations in the Complaint support a reasonable inference that Warden Anderson created and promulgated, or at the least, shared responsibility for the continued operation of the policy of withholding cleaning supplies from the inmates notwithstanding his knowledge the fact that A.H. contaminated the cell with his waste and secretions. According Plaintiff's doctor, these filthy and hazardous conditions caused Plaintiff to contract MRSA. In depriving the inmates of cleaning supplies under these circumstances, even after staph and MRSA began spreading through the inmate population, Warden Anderson acted with deliberate indifference—the requisite state of mind in an Eighth Amendment violation claim. In sum, the Complaint contains sufficient allegations to allow Plaintiff to pursue his substantive due process/Eighth Amendment claim against Warden Anderson under theory of supervisory liability.

**Plaintiff's Danger Creation Claim Against Warden Anderson in His Individual Capacity**

Plaintiff's danger creation claim is essentially a restatement of his substantive due process/Eighth Amendment deprivation claim. [Doc. 15 ¶¶ 46-48] While Plaintiff relies on the same set of facts to support both theories, they fit exclusively under the Eighth Amendment deprivation claim. "The 'danger creation' exception [by which state actors may be held liable for the acts of third parties] applies only when a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence." *Robbins v. Okla.*, 519 F.3d 1242, 1251 (10th Cir. 2008). The

circumstances that Plaintiff complains of do not constitute "private violence."  As such, the Court concludes that Plaintiff's danger creation claim against Warden Anderson in his individual capacity must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**CONCLUSION**

For the reasons stated herein, the Court **DENIES** Defendants' *Motion to Dismiss* Plaintiff's claim that Warden Anderson, in his individual capacity, deprived Plaintiff of his right to substantive due process by subjecting him to conditions that would constitute cruel and unusual punishment.  Defendants' *Motion to Dismiss* is **GRANTED** as to all of Plaintiff's remaining claims.

**IT IS SO ORDERED** this  2nd day of May, 2016 in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
**Chief United States District Judge**